IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LATANYA L. WYATT            )
                            )
        Plaintiffs,         )
                            )        NO. 3:17-cv-1545
v.                          )        JUDGE RICHARDSON
                            )
NISSAN NORTH AMERICA, INC.  )
                            )
        Defendant.          )

## MEMORANDUM OPINION

Pending before the Court is Defendant Nissan North America, Inc.'s Motion for Summary Judgment (Doc. No. 54). Plaintiff has filed a Response (Doc. No. 68), and Defendant has filed a Reply (Doc. No. 73).

## FACTS[1]

Plaintiff Wyatt is an African-American female who began working for Defendant Nissan in August 2012 as a contractor and then as a project manager in the Information Systems ("IS") Application Department. Plaintiff's Complaint alleges that Defendant subjected her to a hostile work environment because of her gender, race, and disability, and retaliated against her (including subjecting her to retaliatory harassment) for her protected activity, all in violation of Title VII (42 U.S.C. § 2000e, *et seq.)*, the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101, *et seq.*), Section 1981 (42 U.S.C. § 1981), and the Family and Medical Leave Act ("FMLA") (29 U.S.C. § 2601, *et seq.*).

---

[1] Where stated without qualification, the facts in this section are based upon the parties' respective responses to the other party's Statement of Undisputed Facts (Doc. Nos. 69 and 74). That is, they are facts asserted by one party and not disputed by the other. This section also indicates where the parties are not, or not necessarily, in agreement regarding particular facts.

In 2013, 2014 and 2015, Plaintiff's supervisors (known as "IS Managers") notified Plaintiff, through performance evaluations and a 2015 "Career Vision" document, that she needed to work more on her role as a project manager and spend less time on technical tasks. (Doc. No. 69 at ¶¶ 4-6). On October 1, 2015, Plaintiff's supervisor removed her as project manager for the project to which she was assigned because he believed she was not appropriately engaged in the project. (*Id*. at ¶ 9). Plaintiff received a "below expectations" performance rating for 2015, and in explaining this rating her supervisor stated, among other things: "Tanya is very technically skilled but she must remain clearly focused on only her specific Project Management responsibilities and not allow herself to become more involved in or distracted by activities and tasks for which she is not responsible." (*Id*. at ¶ 10). In June 2016, believing that Plaintiff still was not meeting expectations in her project manager role, Plaintiff's supervisor started a performance improvement process with her by issuing her what is known as a "Manager's Performance Improvement Expectations" ("MPIE") and, later, a 90-Day Performance Improvement Plan ("PIP"). (*Id.* at ¶¶ 12-15).

Plaintiff alleges that one of Defendant's senior managers, Walter Mullen, sexually harassed her. Plaintiff claims that Mullen's discriminatory conduct toward her began with his making inappropriate sexual and racial comments to and about her and others. (Doc. No. 74 at ¶ 3). She claims that Mullen's conduct escalated into his "continuously touching her, rubbing her shoulders and back down to her buttocks, and making her uncomfortable." (*Id*. at ¶ 6). She alleges that on September 2, 2015, Mullen invited her to lunch and, on a false premise, insisted that she visit his hotel room, where he sexually harassed and assaulted her and would not allow her to leave the

room. (*Id.* at ¶¶ 7-9).[2] Plaintiff testified that once Mullen let her leave the hotel room, she rode back to the office with him after a lot of coercing and apologizing and crying. (Doc. No. 70-3 at 70 (Dep. at 333)). Plaintiff claims that after she rebuffed his advances, Mullen had her removed from a large project at work and continued his sexual harassment of her, despite her opposition. (Doc. No. 70-2 at 44-45 (Dep. R 214-15); *see also* Doc. No. 70-8 at 72).

On December 3, 2015, Plaintiff reported, to two of Defendant's Human Resources ("HR") representatives, the alleged September 2, 2015 sexual harassment by Mullen. (Doc. No. 69 at ¶ 24-26). HR investigated Plaintiff's allegations and determined that Mullen should be fired. (*Id.* at ¶¶ 27-29). Mullen resigned on December 13, 2015, ten days after Plaintiff's report to HR and before HR could notify him of its decision. (*Id.* at ¶ 31). Plaintiff took medical leave for back surgery beginning December 8, 2015, five days after she reported Mullen's alleged behavior to HR. (Doc. No. 70-1 at 17). Despite being on medical leave at the time, Plaintiff complains that Defendant did not inform her that it had investigated her complaint or that it had taken remedial action. (Doc. No. 74 at ¶¶ 30 and 38).

Plaintiff asserts that in May 2016, when she was approved to return to work with restrictions after having back surgery, Defendant retaliated against her for having opposed sexual harassment, for having exercised medical leave, and for having requested reasonable accommodations by demanding additional documentation of her need for accommodations. (Doc. No. 74 at ¶¶ 50 and 52). She also claims that throughout 2016, her supervisor and one of Defendant's HR employees harassed her about her medical conditions and her requested accommodations. (*Id.* at ¶ 51). She contends that Defendant said it could no longer accept her

---

[2] Plaintiff's later summary of events given to Defendant's HR Department indicates that this event took place on September 2, 2015. (Doc. No. 57 at 34).

medical restrictions and arbitrarily refused to accommodate her physician's request for her to have a 40-hour workweek. (*Id*. at ¶ 63).

Plaintiff testified that two managers at Nissan made "highly offensive racial remarks" in the workplace and that she reported those remarks to her IS Manager. (Doc. No. 70-3 at 44-46, 55, 59-60 (Dep. at 307-09, 318, 322-23); Doc. No. 74 at ¶ 4).[3] Plaintiff asserts that Mullen made comments about her "chocolate skin" and called her his "brownie bite." (*Id.* at ¶ 5).

In February of 2017, Plaintiff took a leave of absence, citing medical reasons. (Doc. No. 69 at ¶ 16). Prior to the February 2017 leave, Plaintiff had taken medical leave three other times, and at the conclusion of each of her prior leaves, Defendant restored Plaintiff to her position as a project manager. (*Id.* at ¶¶ 17-18). As Plaintiff agreed in response to Defendant's Statement of Undisputed Material Facts, as of February 26, 2019 (the date her response was filed) she remained on medical leave from her employment with Nissan. (*Id*. at ¶ 16).

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported 307-09, 318, 322-23 motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary

---

[3] Defendant's Responses to Plaintiff's Statement of Additional Facts (Doc. No. 74) do not comply with Local Rule 56.01(c), which provides that the party *must* respond by either (1) agreeing that the fact is undisputed, (2) agreeing that the fact is undisputed for purposes of summary judgment only, or (3) demonstrating that the fact is disputed by citing to a specific citation in the record. Many of Defendant's responses include only an objection and/or argument.

judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628. A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A).

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence

upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 252).

**HOSTILE WORK ENVIRONMENT/HARASSMENT
TITLE VII AND SECTION 1981**[4]

"Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986). A plaintiff may establish a violation of Title VII by proving that discrimination based on gender or race has created a hostile or abusive work environment. *Id*. To establish a claim of hostile work environment, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on race or gender; (4) the harassment created a hostile work environment; and (5) employer liability exists for such harassment. *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 500 (6th Cir. 2009); *Myrick v. Publix Super Mkts., Inc.*, Civil No. 3:16-cv-690, 2017 WL 2362491, at * 6 (M.D. Tenn. May 31, 2017). The last element, employer liability, entails a showing that "the defendant knew or should have known about the harassment and failed to act." *Shoap v. City of Crossville*, 321 F. Supp. 3d 839, 847 (M.D. Tenn. 2018).

Defendant takes aim at element four, arguing that Plaintiff has not shown the alleged harassment to be sufficiently severe or pervasive to constitute a hostile work environment. In this regard, Plaintiff must demonstrate conduct that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Wheeler v. Jackson*

---

[4] The elements of a *prima facie* case, as well as the allocations of the burdens of proof, are the same for employment claims whether they stem from Section 1981 or from Title VII. *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004), cited in *Hawkins v. Center for Spinal Surgery*, 247 F. Supp. 3d 897, 901 (M.D. Tenn. 2017). Section 1981 prohibits discrimination based upon race, but not gender. 42 U.S.C. § 1981.

*Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828, 859 (M.D. Tenn. 2016). The Sixth Circuit has instructed courts to consider factors including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Shoap*, 321 F. Supp. 3d at 847. The Court must view this claim based on the totality of the circumstances, such that it must consider the work environment as a whole and all the alleged incidents of harassment for their cumulative effect. *Id.*

Both an objective and a subjective test must be met. That is, (1) the conduct must be severe or pervasive enough to create an environment a reasonable person would find hostile or abusive and (2) the victim must subjectively regard that environment as abusive. *McKee v. CTel No. 1*, No. 3:17-cv-01566, 2019 WL 1777896, at * 6 (M.D. Tenn. Apr. 23, 2019). To interfere with an employee's work performance, the harassment must make it more difficult to do the job. *Payton v. Stanfill, Inc.*, No. 13-1215, 2015 WL 758468, at * 4 (W.D. Tenn. Feb. 23, 2015).[5]

The Court finds that Plaintiff has not sufficiently alleged severe and pervasive *racially* harassing conduct. She contends that Mullen and one other manager made "highly offensive racial remarks" in the workplace, but the only two specific racial remarks she cites are Mullen's alleged reference to her as his "brownie bite" and alleged reference to her "chocolate skin."[6] She does not

---

[5] Occasional offensive utterances do not rise to the level required to create a hostile work environment, because to hold otherwise would risk changing Title VII into a code of workplace civility. *Kilpatrick v. HCA Human Resources, LLC,* No. 3:17-cv-00670, 2019 WL 998315, at * 6 (M.D. Tenn. Mar. 1, 2019), *appeal docketed,* No. 19-5230, (6th Cir. Mar. 12, 2019); *Phillips v. UAW Int'l,* 854 F.3d 323, 327 (6th Cir. 2017). Title VII is not designed to purge the workplace of vulgarity. *Payton*, 2015 WL 758468, at * 4.

[6] The Court does not disagree with the notion that such isolated remarks are both racial and "highly offensive." But, as the Court concludes, they are insufficient to support a claim of hostile work environment based on race.

offer any specifics about the alleged remarks of the other manager, Ed Hohwald. Plaintiff's allegations and conclusory assertions on this issue are insufficient to survive summary judgment, and Defendant is entitled to summary judgment on Plaintiff's claims for harassment/hostile work environment based upon race.

With regard to harassment/hostile work environment based upon sex or gender, Plaintiff's assertions are more specific. The "Summary of Events" Plaintiff presented to HR on December 3, 2015, stated that, on September 2, 2015, Mullen took her to lunch and, on a false premise, took her to his hotel room, where he sexually harassed and assaulted her by hugging her without her permission and by exposing his genitals and asking if she wanted to touch them. (Doc. No. 57 at 35). According to Plaintiff's Summary of Events, Mullen told her how sexy she was and asked what she had on underneath her skirt. (*Id.*)

Plaintiff stated that, after the hotel incident, Mullen continued to stop by her desk and rub her back, which again made her uncomfortable. (Doc. No. 57 at 35).[7] Plaintiff reported that on November 10, 2015, Mullen ran his hand all the way down her back, and that he ran his hand down her backside every chance he got. (*Id.* at 36). Plaintiff 's allegations span the time period September 2015 through December 8, 2015, when Plaintiff left for medical leave. In addition to the hotel room incident, Plaintiff alleges continuous (not just isolated) incidents of inappropriate touching; she claims that Mullen "continuously touch[ed] her, rubbing her shoulders and back down to her buttocks, and making her uncomfortable." Doc. No. 74 at ¶ 6.

---

[7] On November 5, 2015, Plaintiff agreed to go to lunch with Mullen again, but (so far as she reported in her Summary of Events) suffered no sexual harassment during that outing. (Doc. No. 57 at 35).

Viewing the facts in the light most favorable to Plaintiff and considering the totality of the circumstances, the Court finds that Plaintiff has carried her burden to demonstrate a genuine issue of material fact—on both the objective and subjective components of the inquiry—as to whether Mullen created a sexually hostile work environment.[8] First, a reasonable jury could find that Mullen's conduct was severe or pervasive enough to create an environment a reasonable person would find hostile or abusive. Whether conduct is severe or pervasive is "quintessentially a question of fact." *Ellison v. Clarksville Montgomery Cty. School Sys.*, Case No. 3:17-cv-00729, 2019 WL 280982, at * 8 (M.D. Tenn. Jan. 22, 2019); *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 310 (6th Cir. 2016). Here, it is a question that reasonably could be resolved in favor of Plaintiff.

The Court is aware that the Sixth Circuit has held, in particular cases, that a plaintiff's evidence of a series of unwanted sexual advances did not suffice to create a genuine issue as to the existence of a hostile work environment. But given Plaintiff's evidentiary showing in this case, a jury could reasonably find that Mullen's continuous behavior made it more difficult for Plaintiff to do her job. Likewise, a reasonable jury could find that Plaintiff regarded her environment as abusive. This conclusion is straightforward, given the allegedly invasive and unwanted nature of Mullen's alleged conduct, and the fact that Plaintiff reported it to HR as abusive.

The last element of a hostile work environment claim is employer liability. In hostile work environment cases, the analysis of the employer's liability depends on the status of the alleged harasser. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). If the alleged harasser is a co-

---

[8] Plaintiff's claim that she subjectively viewed these actions as severe and pervasive is somewhat undermined by the fact that she waited three months to report the hotel room incident and she also chose to go to lunch alone with Mullen again two months after that incident. But that is not enough to remove this issue from the province of the jury.

worker, the employer is liable only if it was negligent in controlling working conditions. *Id*. An

employer is directly liable for a co-worker's unlawful harassment if the employer was negligent

with respect to the offensive behavior; that is, if the employer knew or should have known of the

harassment yet failed to take prompt and appropriate corrective action. *Ellison*, 2019 WL 280982,

at * 10.

     If the alleged harasser is a supervisor, the employer's liability depends upon whether the

harassment culminated in a "tangible employment action." *Vance*, 570 U.S. at 424. If the harasser

is a supervisor, and if the harassment culminated in a "tangible employment action," the employer

is strictly liable. *McKee*, 2019 WL 1777896, at * 4. A "tangible employment action" is a significant

change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits. *Id*. If

the supervisor's harassment did *not* result in a tangible employment action, then the employer may

assert an affirmative defense and avoid liability by establishing that (1) the employer exercised

reasonable care to prevent and correct any harassing behavior and (2) the plaintiff unreasonably

failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Id*. (quoting *Vance*, 570 U.S. at 424).[9]

     The parties dispute whether Mullen was a supervisor or instead was a co-worker. For

purposes of vicarious liability under Title VII, a supervisor is someone who is empowered by the

employer to take tangible employment actions against the victim. *Mys v. Mich. Dep't of State

Police*, 886 F.3d 591, 600 (6th Cir. 2018). Plaintiff testified that Mullen was in her chain of

---

[9] This affirmative defense was prescribed in the cases of *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775 (1998). *See Vance*, 570 U.S. 421, 423-24 (2013). It thus is sometimes referred to as the "Faragher/Ellerth" (or something similar) defense.

command in that he reported on her performance reviews and she reported to him when she was working on one of his projects. (Doc. No. 70-2 at 177-180). According to her testimony, if Mullen wanted to remove her from a project, however, he would have to work with her supervisor, Billy Davis, to get it done. (*Id*. at 178). Davis testified that Mullen did not supervise project managers and had only indirect authority to remove project managers from projects. (Doc. No. 70-8 at 57-58). One of Defendant's HR employees testified that Mullen had authority to remove project managers from projects and to terminate employees who were his direct reports. (Doc. No. 61 at 67-68). Defendant did not dispute, in response to Plaintiff's Statement of Additional Material Facts, that Mullen had supervisory authority over Plaintiff when he managed her on projects. (Doc. No. 74 at ¶ 2).[10]

When decision-making power belongs to a small number of individuals, those individuals will likely rely on other workers who actually interact with the affected employee, and the employer may be held to have effectively delegated power to take tangible employment actions to the employees on whose recommendations it relies. *McKee*, 2019 WL 1777896, at * 5 (citing *Vance*, 570 U.S. at 447). Such could be the case here. Plaintiff has carried her burden to show that there are genuine issues of material fact as to whether Mullen could be characterized as Plaintiff's supervisor for purposes of this analysis. *Zakrzewska v. The New Sch.*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009) (denying employer summary judgment based in part on the existence of "evidence from which a jury could conclude that [the alleged harasser] was a supervisory or managerial employee"), *certified question answered, judgment aff'd sub nom. Zakrzewska v. New Sch.*, 620 F.3d 168 (2d Cir. 2010).

---

[10] Instead, Defendant merely filed an objection and argument, not indicating "disputed" or "undisputed" as required by the Local Rules.

Assuming that Mullen was one of Plaintiff's supervisors, the question is whether a tangible adverse employment action resulted from his alleged harassment. The record reflects an absence of any such employment action. Plaintiff has failed to show evidence of a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits as a result of the alleged sexual harassment. *McKee*, 2019 WL 1777896, at * 6. Plaintiff does not dispute that Mullen resigned in December 2016. She does not assert continued harassment after that resignation, and she has been on leave since February 2017. (Doc. No. 69 at ¶ 16). She has not presented evidence that as a result of the alleged harassing behavior, Defendant subjected her to a tangible adverse employment action. She alleges that she has not returned to work because Defendant would not accommodate her disability, not because of sexual harassment.

Defendant, therefore, is entitled to assert the above-described affirmative defense and to have the opportunity to show that (1) it exercised reasonable care to prevent and correct any harassing behavior and (2) Plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *McKee*, 2019 WL 1777896, at * 4; *Fox v. Yates Servs., LLC,* 232 F. Supp. 3d 971, 980 (M.D. Tenn. 2017). In terms of correction, the most significant measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified. *Id*. "By doing so, the employer puts all employees on notice that it takes such allegations seriously and will not tolerate harassment in the workplace." *Id*. (citing *Collette v. Stein-Mart, Inc.,* 126 F. App'x 678, 686 (6th Cir. 2005)). Defendant has presented evidence of its anti-harassment policy that prohibits harassment and outlines a reporting procedure. (Doc. No. 70-7 at 66-71). Providing employees written notice of such policies and how they are enforced constitutes an adequate general

preventative measure. *Collette*, 126 F. App'x at 685.[11] The fact that Plaintiff was made aware of the anti-harassment policy and reporting procedures is sufficiently established by her actual reporting and her following those procedures when, several months after the alleged harassment, she decided to report the misconduct.

In addition to prohibiting sexual harassment, the Sexual and Other Harassment Policy produced by Defendant provides both formal (complaint to management or Human Resources) and informal (report to the Ethics and Compliance Hotline) ways to report harassment. (Doc. No. 70-7 at 67). It requires members of management to report any harassment complaint or possible harassment. (*Id*. at 67 and 70) It provides a means by which an employee who is uncomfortable reporting harassment to his/her department manager or to Human Resources can report the harassment to any member of management or to the Hotline. (*Id.* at 69). This Policy also provides for thorough, confidential, and prompt investigation of any reported harassment. (*Id*. at 69 and 71). Defendant has shown the absence of a genuine issue of material fact as to the existence of a reasonable anti-harassment policy that provided the information needed for employees to report harassment.

Moreover, the Court finds that Defendant promptly investigated and corrected the alleged harassment by Mullen once it learned about his behavior. Plaintiff first reported the alleged sexual harassment to HR representatives on December 3, 2015. (Doc. No. 69 at ¶ 25). She was off work on medical leave beginning December 8, 2015. She does not dispute that HR investigated the allegations and on December 10, 2015, recommended that Mullen be fired. She also does not dispute that Mullen resigned on December 13, 2016. (*Id*. at ¶¶ 27-31). Plaintiff complains that

---

[11] The employer cannot merely *have* an anti-harassment policy; it must also *disseminate* or *publicize* it. *Collette*, 126 F. App'x at 685.

Defendant did not notify her, while she was on medical leave, about the result of their investigation or Mullen's termination, but she cites no authority to show that Defendant had that obligation. The Court finds that Defendant has sufficiently carried its burden on the first prong of the affirmative defense by showing the absence of a genuine issue of material fact as to the existence and effectiveness of its anti-harassment policy and its investigation of Plaintiff's complaint. In other words, Defendant has demonstrated that there is no genuine issue of material fact as to whether it exercised reasonable care in preventing and correcting harassment under prong one of the affirmative defense. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 350-51 (6th Cir. 2005).

With regard to the second part of the affirmative defense, Defendant asserts that Plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities it provided, by waiting three months to report the hotel incident to Human Resources.[12] The Sixth Circuit has held that an employee unreasonably fails to take advantage of corrective opportunities when she waits two months to report harassment. *Equal Emp't Opportunity Comm'n. v. Autozone, Inc.,* 692 F. App'x 280, 286 (6th Cir. 2017).[13] Here, there is no genuine issue of material fact regarding either (1) the length of delay between Mullen's harassment and Plaintiff's reporting it to Defendant or (2) the availability of very real corrective opportunities provided by Defendant. Thus, there is no genuine issue that Plaintiff unreasonably failed to take advantage of available preventative or

---

[12] Plaintiff's Complaint alleges that Mullen's discriminatory conduct actually began *before* the hotel incident by his making inappropriate sexual comments and placing his hands on and rubbing her shoulders, arms and back while she was trying to work. (Doc. No. 1 at ¶ 7). As to this earlier alleged harassment, Plaintiff waited even longer than three months to report it.

[13] To the extent Plaintiff relies on reporting the harassment to another manager, David Butler, who reported it to Defendant's compliance hotline, the date of that reporting was still more than two months after the hotel incident (and thus obviously even longer after the earlier alleged harassment), and Butler did not report any allegation about the hotel incident because Plaintiff did not mention that incident to him. (Doc. No. 59 at 3).

corrective opportunities that the employer provided via its (enforced) anti-harassment policy and investigations conducted thereunder.

Therefore, the Court finds that, even if Mullen were Plaintiff's supervisor, as Plaintiff asserts, Defendant has sufficiently established its affirmative defense to liability for Mullen's action and Plaintiff has not, in response, sufficiently demonstrated a genuine issue of material fact concerning that defense.

If Mullen had been merely a co-worker rather than a supervisor, Plaintiff would have to show that Defendant was negligent in controlling working conditions—that is, that Defendant knew or should have known of the harassment, yet failed to take prompt and appropriate corrective action. *Ellison*, 2019 WL 280962, at * 10. The Sixth Circuit has held that application of this standard requires a plaintiff to show that the employer's response to the plaintiff's complaints manifested indifference or unreasonableness in light of the facts the employer knew or should have known. *Id*. As explained above, Plaintiff first reported the alleged sexual harassment to HR representatives on December 3, 2015. (Doc. No. 69 at ¶ 25). She does not dispute that HR investigated the allegations and, on December 10, 2015, recommended termination of Mullen's employment. She also does not dispute that Mullen resigned on December 13, 2016. (*Id*. at ¶¶ 27-31). Defendant's actions in response to the December 3, 2015 complaint, which were completed in ten days, were quite clearly not indifferent or unreasonable. Defendant has sufficiently shown that when the alleged harassment was reported, it took prompt and appropriate corrective action, and Plaintiff has not met her resulting burden on summary judgment to show otherwise for purposes of alleged co-worker harassment.

For all these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's Title VII and Section 1981 hostile work environment claims.

# RETALIATION – TITLE VII [14]

Plaintiff contends that Defendant retaliated against her for opposing Mullen's unwelcomed sexual advances by removing her from a major project, resulting in adverse effects for her promotion opportunities, performance review, ability to receive a pay raise, relationships with other managers who were friends with or supported Mullen, and ability to perform her job. (Doc. No. 1 at 9). She also alleges that Defendant retaliated against her through severe or pervasive retaliatory harassment by supervisors. (*Id.*)

## *Prima Facie* Case

To establish a Title VII claim of retaliation, Plaintiff must demonstrate that (1) she engaged in protected activity, (2) the exercise of her protected rights was known to Defendant, (3) either (a) Defendant subsequently took an adverse employment action against her or (b) she was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *DePalma v. Secretary of the Air Force*, 754 F. App'x 321, 329 (6th Cir. 2018). If the plaintiff satisfies the elements of this *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its employment decision. *Id*. at 326. If the employer provides such a reason, the burden shifts back to the plaintiff to show that the legitimate reason offered by the employer was not its true reason but rather was pretext for unlawful retaliation. *Id*.

---

[14] Plaintiff has not alleged that Defendant retaliated against her because of protected activity related to race under Section 1981. In her Complaint, she states that Defendant "retaliated against her for opposing and refusing to comply with Mullen's unwelcome sexual advances and for reporting sexual harassment." (Doc. No. 1 at ¶ 17). Plaintiff also alleges retaliation in violation of the ADA and FMLA and, although her claims overlap, the Court will address those two statutes later in this opinion.

Defendant does not dispute that Plaintiff engaged in protected activity by opposing the alleged sexual harassment. Defendant instead argues that Plaintiff cannot prove a causal connection between her protected activity and her 2015 Performance Evaluation and June 2016 MPIE because Davis, Plaintiff's supervisor (who gave her those performance reviews), did not know about the protected activity when he issued those documents. Davis testified that he did not know about Plaintiff's complaint concerning Mullen. (Doc. No. 70-8 at 62-68). Plaintiff asserts that Davis *did* know, citing to her deposition testimony recounting alleged statements of co-workers to her that purportedly reflect Davis's knowledge. (Doc. No. 74 at ¶ 53).

Defendant objected to these statements as inadmissible hearsay. On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Defendant's hearsay objection, in substance, is just such an objection. Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp,* 2017 WL 57792 at ** 5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

Defendant is correct that Plaintiff here relies upon hearsay. Specifically, Plaintiff's testimony at issue recounts out-of-court statements of several declarants (Plaintiff's co-employees) offered for the truth of the matter asserted by the declarants, *i.e.*, that Davis in fact said the things that the declarants allegedly told Plaintiff he said.[15] This is rank hearsay, and the Court does not

---

[15] As for *Davis's* purported statements (as opposed to Plaintiff's co-workers' alleged statements about Davis's purported statements), they would not have been hearsay within hearsay, because they are not being offered for the truth of any matter supposedly asserted by Davis. Some of the purported statements, such as his alleged command to "put all the work on [Plaintiff]" do not even

see (and Plaintiff has not explained) how it is subject to any exception to the rule against hearsay. This makes it unsuitable for consideration on motion for summary judgment.[16] *See Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 1005 (W.D. Ky. 2017) (granting the plaintiff summary judgment as to the defendant's affirmative defense because the defendant "has offered only the inadmissible hearsay testimony of [a witness who gave deposition testimony regarding what he was told by his father], which the Court agrees 'cannot be presented in a form that would be admissible in evidence' at trial." (citing Fed. R. Civ. P. 56(c)(2)). Theoretically, Plaintiff here could attempt to explain how her hearsay testimony about what her co-employees told her could be admissible despite the general rule against hearsay, and thus competent for consideration on this summary judgment motion; however, Plaintiff has not done so. Thus, her hearsay testimony cannot be considered. *Smith v. Palafox*, 728 F. App'x 270, 276 (5th Cir. 2018) (refusing to consider

---

contain any assertion. And all of those purported statements are being offered not for the truth of the assertion(s) (if any) contained therein, but rather for the mere (alleged) fact that Davis made them (and thus demonstrated his knowledge that Plaintiff had complained about Mullen). But unfortunately for Plaintiff, although she has no hearsay-within-hearsay problem as to Davis's purported statements, she has not surmounted the hearsay problem as to Plaintiff's co-employees' alleged statements about Davis's purported statements.

[16] Notably, for two reasons, it is irrelevant that the co-employees theoretically could possibly testify as to Davis's (non-hearsay) statements. First, the issue is not whether the *co-employees'* hearsay statements regarding Davis's statements could be presented in a form admissible at trial (*i.e.,* the co-employee's testimony). As noted above, in response to a colorable objection under Rule 56(c)(2) the proponent must show that the material in question is admissible or could be presented in a form that is admissible; this means the "*material cited.*" Fed. R. Civ. P. 56(c)(2). And it is clear to the Court that here, the "material cited" means *the testimony of Plaintiff*, and does not include alleged events or facts, such as historical statements of other persons, *mentioned in* the testimony of Plaintiff; the Court cannot construe "material" within the meaning of Rule 56 to include events or facts, as opposed to the medium (such as particular testimony). Second, it is sheer speculation, based on the current record, that these co-employees actually would testify that Davis made the statements Plaintiff claims he made; thus, the Court cannot conclude that testimony from these co-employees regarding Davis's alleged statements could be presented at trial.

an unsworn expert report offered by a plaintiff opposing summary judgment, because the plaintiff "has not explained how the reports could be reduced to admissible evidence at trial").

Without this hearsay testimony, Plaintiff has not carried her burden to create a genuine issue of material fact as to Davis's knowledge and thus as to any causal connection between her protected activity and the alleged adverse employment actions of her performance reviews.

Plaintiff has also asserted that Defendant retaliated against her for opposing Mullen's actions by removing her from a major project. Even if the Court assumes that removing an employee from a major project is a "materially adverse employment action," this assertion falls apart as a temporal matter. The removal from that project occurred in October 2015. (Doc. No. 69 at ¶¶ 7-9). Plaintiff reported Mullen's behavior in December 2015. The removal from this project simply could not have been in response to Plaintiff's oppositional behavior.

The Complaint alleges other adverse employment actions Plaintiff allegedly suffered in retaliation for having opposed sexual harassment; that is, denial of promotions for which she applied and pay raises she failed to receive. (Doc. No. 1 at ¶¶ 9 and 11). Plaintiff has not shown she was denied any specific promotion as a direct result of her protected activity;[17] that is, she has not presented evidence of a causal connection between her protected activity and any specific promotion for which she applied, was qualified, and was turned down. Neither has Plaintiff identified any specific pay raise for which she was eligible and qualified that she did not receive because of her protected activity. Defendant adequately discharged its burden to show that it is entitled to summary judgment on these claims by showing that Plaintiff cannot establish a causal

---

[17] Although Plaintiff identified one promotion for which she applied and was interviewed (Doc. No. 74 at ¶ 18), she has not presented any evidence that she was eligible or qualified for that position or that she failed to obtain it because of her protected activity.

connection between her protected activity and the alleged adverse employment actions. Plaintiff has not carried her resulting burden to show sufficient evidence of the causal connection required for a retaliation claim (or of a discrimination claim)[18] that is based on failure to promote or to receive a pay raise.

Plaintiff also alleges the adverse employment action of retaliatory harassment under Title VII. She claims that her supervisors subjected her to severe and pervasive harassment in retaliation for her opposition to Mullen's advances. The Sixth Circuit has held that severe or pervasive supervisor harassment following a sexual harassment complaint can constitute an adverse employment action to support a claim of retaliation for the purposes of a Title VII action. *Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003). As with a hostile work environment, the retaliatory harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Id.*; *Reeves v. Tenn. Farmers Mut. Ins. Co., Inc.*, No. 1:12-cv-00018, 2013 WL 2177918, at * 11 (M.D. Tenn. May 20, 2013) (standard for "severe or pervasive" harassment is the same in retaliation context as in the sexual and racial discrimination contexts).

As stated above, Plaintiff alleges that after she opposed Mullen's unwelcome sexual advances, Defendant subjected her to retaliatory harassment by removing her from a major project for false and pretexual reasons. (Doc. No. 1 at ¶ 9). Once again, she claims that the retaliatory harassment adversely affected her promotional opportunities, her performance review, her ability to obtain a pay raise and her ability to perform her job. (*Id.*)

---

[18] Plaintiff appears now to be asserting a discrimination claim based on failure to promote; in response to Defendant's Motion for Summary Judgment, Plaintiff reiterates that her "below expectations" appraisal precluded her from receiving promotions. (Doc. No. 68 at ¶ 9).

Much of this alleged retaliatory harassment occurred before Plaintiff's alleged protected activity on December 3, 2015. Moreover, in response to Defendant's motion, Plaintiff set forth arguments and evidence to show that Defendant subjected her to retaliatory harassment based upon her *requests for accommodations*, not based upon her *opposing sexual misbehavior*. (Doc. No. 68 at ¶¶ 8-11). Any claim of retaliatory harassment based upon her opposition to Mullen's behavior is conclusory and speculative and not supported by the evidence, so Defendant is entitled to summary judgment on the retaliatory harassment claim.

Accordingly, Plaintiff has failed to carry her burden to show genuine issues of material fact to defeat Defendant's Motion for Summary Judgment on her Title VII retaliation claims, and Defendant is entitled to summary judgment on those claims.

## AMERICANS WITH DISABILITIES ACT

The ADA forbids discrimination against a qualified individual on the basis of disability in the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). Plaintiff contends that she is a "qualified individual with a disability" within the meaning of the ADA, with impairments that substantially limit her in one or more major life activities.[19] (Doc. No. 1 at ¶ 18). She claims that, despite her impairments, she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation. (*Id*. at ¶19).

Failure to Accommodate

Plaintiff contends Defendant was aware that she suffers from migraine headaches and diabetes and has had multiple back surgeries. (Doc. No. 74 at ¶ 46). She claims that Defendant

---

[19] Defendant does not agree that Plaintiff is a qualified individual with a disability, as set forth below.

failed to provide her reasonable, requested accommodations for her disability under the ADA. In or about April 2015, Plaintiff's physician provided Defendant a list of recommended workplace modifications for Plaintiff. (Doc. No. 69 at ¶ 20).[20] Plaintiff admits that, in 2015, Defendant honored "nearly all" of the recommendations contained in her physician's letter. (Doc. No. 69 at ¶ 23). Plaintiff asserts that in May 2016, when she returned to work after back surgery, she again requested accommodations, including working remotely or telecommuting some of the time and maintaining a 40-hour-per-week schedule. (Doc. No. 74 at ¶ 47). In May 2016, Plaintiff also requested that she be allowed to attend physical therapy appointments that her doctor had ordered, and she noted certain sitting, standing, and lifting restrictions for her back. (Doc. No. 74 at ¶ 48).

Plaintiff has stated that on or about May 20, 2016, she was called to Defendant's HR Department to discuss her medical restrictions and was given three options—to return to work with no restrictions, to have her doctor update her restrictions so they could be reviewed by Defendant's legal department, or to have her doctor take her off work completely and go on long-term disability. (Doc. No. 74 at ¶ 49; Doc. No. 70-3 at 351-354). Plaintiff understood these demands to be both a threat to her continued employment and a failure to reasonably accommodate her work restrictions. (*Id.*). She claims that Defendant told her that it would no longer accept her medical restrictions and arbitrarily refused to accommodate her physician's request for a 40-hour work week, "irrespective of whether she was able to complete her work within 40 hours." (Doc. No. 74 at ¶ 63).

---

[20] These included an anti-glare filter for her computer, allowing her to wear sunglasses or anti-glare glasses at work, locating her workspace in a low-traffic area, allowing her to wear noise-cancelling headphones, offering a dark, private area to go when she had a migraine, allowing her to work from home 2-3 days per week, flexible leave options when she had a migraine, working a flexible schedule, and relief from mandatory after-hours, social functions. (Doc. No. 69 at ¶ 21).

Defendant first contends that Plaintiff's failure to accommodate claim must be dismissed for failure to exhaust administrative remedies. A plaintiff seeking to bring ADA claims must first properly exhaust administrative remedies, and failure to do so is an appropriate basis for dismissal. *Jones v. Natural Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018). For an administrative claim to be timely, a charge must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discrimination. *Bridgeman v. City of Bedford Heights*, No. 1:18 cv 2481, 2019 WL 1469381, at * 3 (N.D. Ohio Apr. 3, 2019) (citing *Jones*, 740 F. App'x at 492-93). Defendant argues that Plaintiff's EEOC charge was filed more than 300 days from April 2015, the time of Plaintiff's earlier requests, But the April 2015 requests are not before the Court. Instead, Plaintiff has alleged a failure to accommodate in May 2016 (within the 300 days). Plaintiff's EEOC charge of June 27, 2016, was timely as to her requests of May 2016.

Defendant further argues that Plaintiff is not a "qualified individual with a disability" under the ADA because she cannot perform the essential functions of her job. In order to establish a violation of the ADA, a plaintiff must establish, among other things, that she is qualified to perform the essential functions of the position, with or without reasonable accommodation. 42 U.S.C. § 12111(8). The Sixth Circuit has opined that a failure-to-accommodate claim necessarily involves direct evidence, thus requiring an analysis different from an indirect evidence discrimination or retaliation claim, where the burdens shift between the defendant and the plaintiff as one side or the other meets the burden it shoulders at a particular phase.[21] *Hostettler*, 895 F.3d at 853 ("That squares with our settled law because it 'does not require the fact finder to draw any inferences' that the disability was at least a motivating factor.") (citation omitted).

---

[21] With indirect evidence, the Court applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Hostettler*, 895 F.3d at 852.

In a direct-evidence case, a plaintiff must show that (1) she is an individual with a disability and (2) she is otherwise qualified for her job despite the disability (a) without accommodation from the employer, (b) with an alleged "essential" job requirement eliminated, or (c) with a proposed reasonable accommodation. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). If the plaintiff establishes these elements, then the defendant bears the burden of proving that a challenged job criterion is essential or that a proposed accommodation will impose an undue hardship on the defendant. *Id.*

Assuming Plaintiff can show she has a disability, she must also show that she can perform the essential functions of her job with or without an accommodation (or with an allegedly essential job requirement eliminated). *Hostettler*, 895 F.3d at 854. A job function is essential if its removal would fundamentally alter the position. *Id.* If a plaintiff's disability renders her unable to perform an essential function of her job, then she is not a "qualified individual" protected by the ADA. *Cannon v. Univ. of Tenn.*, No. 3:15-cv-576, 2017 WL 2189565, at * 11 (E.D. Tenn. May 17, 2017) (citing *Wagner v. Sherwin-Williams Co.*, 647 F. App'x 645, 650 (6th Cir. 2016)). Under the ADA, Plaintiff bears the burden of showing that she proposed to Defendant an accommodation and that the proposed accommodation was objectively reasonable. *Bush v. Compass Group USA, Inc.*, 683 F. App'x 440, 449 (6th Cir. 2017).

In 2016, Plaintiff's physician recommended that Defendant limit the number of tasks assigned to Plaintiff to a number that could be completed on time within the parameters of a 40-hour workweek. (Doc. No. 70-4). He also requested that Plaintiff be allowed to telework from home 2-3 days per week, that Defendant provide her flexible leave when she experienced a migraine, and that Defendant allow her a flexible work schedule. (*Id.*) Defendant contends that no reasonable accommodation exists to allow Plaintiff to perform the essential functions of her job

with these restrictions. Defendant also argues, more specifically, that Plaintiff's requested accommodations are not reasonable.

Plaintiff's response focuses on her request for a 40-hour work week, and she claims that this requested accommodation presents no hardship for Defendant. Plaintiff asserts that she can accomplish all her work in 40 hours per week, although she admits that project managers typically work 45 to 50 hours per week. (Doc. No. 68 at 23). Plaintiff argues that Defendant covered her work while she was out on medical leave and claims basically that Defendant could likewise cover anything over her proposed 40 hours once she is back. The evidence of a temporary accommodation, however, does not mean that a permanent accommodation would have no consequences to the employer. *Wagner*, 647 F. App'x at 650. By voluntarily assuming the limited burden associated with a temporary accommodation, an employer does not concede that a job function is non-essential or that the burden associated with a permanent accommodation would not be unduly onerous. *Id.*

Moreover, the ADA does not require an employer to accommodate individuals by shifting an essential job function onto others. *Meade v. AT&T Corp.,* 657 F. App'x 391, 397 (6th Cir. 2016); s*ee also Porter v. Tri-Health, Inc.,* Civil Action No. 1:16cv00978, 2018 WL 5779490, at * 10 (S.D. Ohio Nov. 2, 2018) (employer simply not required to shift essential function of job to another employee). Plaintiff's proposed accommodation does not merely modify her job schedule; it risks shifting the burden of more projects and/or additional work hours to someone else.

Plaintiff's supervisor, Davis, testified that giving Plaintiff a workweek of 40 hours maximum would require him to give her less than a full workload—something he could not do.

(Doc. No. 70-9 at 62 (Dep. at 147)).[22] He further testified that project managers, on average, work between 45 and 50 hours per week and that Plaintiff was not performing the work she was assigned in less than 40 hours. (*Id*. at 64 and 66 (Dep. at 149 and 51)). He stated that he was able to get the work done while she was on leave by "overloading people." (*Id.* at 63 (Dep. at 148)). Davis said that, to his knowledge, there are no other project managers who work 40 or fewer hours per week and that it is not reasonable to have them work less than 40 hours. (*Id.* at 66-67 (Dep. at 151-52)).

The Court will not ignore Defendant's business judgments about the number of hours required of its project managers and whether the additional number of hours is an essential function of the job. *See Wheeler*, 159 F. Supp. 3d at 854 (inquiry into essential functions not intended to second-guess employer's business judgment or lower employer's job standards). The ADA provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8).

Although the Sixth Circuit does not require blind deference to an employer's stated judgment as to essential job functions, it does require granting summary judgment where an employer's judgment as to essential job functions is "job-related, uniformly-enforced, and consistent with business necessity." *Equal Emp. Opportunity Comm'n v. Ford Motor Co.*, 782 F.3d 753, 765-66 (6th Cir. 2015). The factors to be considered in this analysis include, among other things, the employer's judgment as to which functions are essential and the consequences of

---

[22] Plaintiff admitted that, as a salaried employee, she had a certain amount of work to do, and she was expected to do it no matter how long it took her. (Doc. No. 70-3 at 35 (Dep. at 298)). She stated that unless there were some sort of guidelines and parameters, "you will work 80 hours a week at Nissan." (*Id*. at 36 (Dep. at 299)). This admission—that to complete one's assigned work at Nissan one is at risk of working 80 hours a week— and her observation that one had to be available to work pretty much all the time, (*id.*), are consistent with Davis's testimony that limiting Plaintiff to less than 40 hours would require giving her less than a full workload.

not requiring the plaintiff to perform the function. 29 C.F.R. § 1630.2(n)(3)(i) and (iv). Defendant has demonstrated that Plaintiff's essential job functions were job-related, uniformly-enforced, and consistent with business necessity (*see, e.g.,* testimony of Davis, cited above), and Plaintiff has not shown otherwise.

A proposed accommodation requesting that an employer remove an essential function from a job position is *per se* unreasonable, and an employer is not required to re-allocate essential functions. *Bush,* 683 F. App'x at 449. An employee who cannot meet the attendance requirements of the job at issue cannot be considered a qualified individual protected by the ADA. *Wheeler*, 159 F. Supp. 3d at 848. Nissan claims that the needs of the project manager's position require that he or she be physically located at Nissan headquarters. (Doc. No. 70-4 at 7). "We are able to provide flexibility in this area only to a certain point and therefore must act accordingly." (*Id.*) Defendant asks its project managers to be in the office during the core hours of 9 a.m. to 3 p.m. (*Id.*) Plaintiff asks the Court to disregard Defendant's business judgment as to the essential functions of her job and modify her job to her liking, one that does not require regular attendance from 9 to 3 each day and one that does not require her to carry a full workload. This the Court will not do.

The accommodations Plaintiff seeks also include flexibility to leave or miss work intermittently because of migraine headaches and to attend physical therapy. The Sixth Circuit has held, as a matter of law, that an unlimited ability to leave work through the use of intermittent leave is not reasonable. *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 528 (6th Cir. 2015). Basically, Plaintiff is seeking a permanent less-than-full-workload position in order to accommodate her alleged disabilities. Defendant has shown that such an accommodation would shift essential functions to other employees and "overload people." In *Meade*, the court stated that an employer need not create a "permanent light-duty position" in order to accommodate one of its

employees by shifting essential job functions onto others, finding that a proposed permanent light-duty position was not a reasonable accommodation. *Meade,* 657 F. App'x at 396-397.

Plaintiff has not created a genuine issue of material fact as to whether her requested accommodations were reasonable. They were not. Accordingly, Defendant will be granted summary judgment on Plaintiff's failure-to-accommodate claim.

Hostile Work Environment

Plaintiff also contends that Defendant subjected her to a hostile work environment, in violation of the ADA, through retaliatory harassment. She alleges that from May through November 2016, her supervisor and one of Defendant's HR employees harassed her concerning her medical conditions and her requested accommodations. (Doc. No. 1 at ¶¶ 24-25). In response to Defendant's motion, Plaintiff contends that such harassment was "retaliatory" in response to her taking medical leave and requesting accommodations. (Doc. No. 68 at 24). Both the ADA and the FMLA prohibit retaliation for the exercise of rights under the respective statutes. 42 U.S.C. § 12203; 29 U.S.C. § 2615(a).

Defendant argues that Plaintiff's hostile work environment claim must be dismissed because she cannot show that retaliatory harassment was severe or pervasive in her workplace. As Defendant notes, it is permitted (as part of the interactive process under the ADA) to question Plaintiff to understand the extent and duration of her claimed disability and restrictions—which, Defendant claims with evidentiary support, is all it did here. *See Boyte v. Shulkin,* Case No. 3:16-cv-02799, 2018 WL 898680, at * 4 (M.D. Tenn. Feb. 14, 2018) and 29 C.F.R. § 1630.2(o)(3). As in *Boyte,* Defendant argues, Plaintiff has not alleged any facts indicating discriminatory intimidation, ridicule, or insult.

In response, Plaintiff has not set forth facts to show that the work environment was permeated with severe or pervasive harassment because of her disability, medical leave or requested accommodations. In her deposition, Plaintiff took issue with the fact that Defendant allowed her to return to work for two days before HR notified her that Defendant could not accommodate all her restrictions (Doc. No. 70-3 at 91 (Dep. at 354)), but that fact does not demonstrate a hostile work environment. Moreover, she has not identified a genuine issue of material fact showing indicating discriminatory intimidation, ridicule, or insult based upon her disability. Plaintiff testified that Defendant questioned her about her medical conditions, restrictions, and requested accommodations, but she has not shown that questioning to be severe, pervasive, or harassing sufficient to create an abusive working environment.

In response to a motion for summary judgment, once the moving party has met its initial burden showing the absence of a genuine issue for trial, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. There must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). And the mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment. Plaintiff has not come forward with sufficient evidence to survive summary judgment on this issue.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA and FMLA hostile work environment claims, and those claims will be dismissed.

Retaliation[23]

Plaintiff also asserts that Defendant retaliated against her for requesting accommodations pursuant to the ADA and for taking FLMA medical leave. Defendant argues that Plaintiff cannot establish a *prima facie* case of ADA or FMLA retaliation.

To establish a *prima facie* case of retaliation under the ADA or the FLMA, a plaintiff must show evidence that: (1) she engaged in protected activity; (2) her engagement in that protected activity was known to her employer; (3) her employer, thereafter, took an adverse employment action against her; and (4) a causal link exists between her engagement in the protected activity and the adverse employment action. *Weems v. Metro. Gov't of Nashville and Davidson Cty.*, No. 3:17-cv-01072, 2018 WL 6341826, at * 8 (M.D. Tenn. Dec. 4, 2018) (ADA); *Cooley v. East Tenn. Human Resource Agency, Inc.*, 243 F. Supp. 3d 941, 947 (E.D. Tenn. 2017) (FMLA).

The bar for demonstrating the *prima facie* case is a low one. *M.L. v. Williamson Cty. Bd. of Educ.*, No. 3:16-cv-1093, 2018 WL 2970704, at * 3 (M.D. Tenn. June 12, 2018). If Plaintiff establishes a *prima facie* case, Defendant can rebut that showing by articulating a legitimate, non-discriminatory reason for its actions, and Plaintiff can invalidate Defendant's proffered reason by showing that reason to be pretext for retaliation. *Underwood v. Yates Servs., LLC*, No. 16-cv-03276, 2018 WL 4494839, at * 5 (M.D. Tenn. Sept. 19, 2018).

Here, each of Defendant's alleged ADA retaliatory actions constitute, in essence, nothing more than a particular way Defendant allegedly refused to honor Plaintiff's requests for reasonable

_____

[23] Under the FMLA, it is unlawful for any employer to interfere with, restrain, or deny the exercise of any right under the FMLA or to discharge or discriminate against any individual for [among other things] opposing any practice made unlawful by the FMLA. 29 U.S.C. § 2615(a). Plaintiff contends that Defendant retaliated against her for taking FMLA medical leave as well as for requesting accommodations.

accommodations. And alleging that these actions were in retaliation for her requesting accommodations is simply a "repackaging" of her failure to accommodate claim. *See Incutto v. Newton Public Schs.*, Civil No. 16-12385, 2019 WL 1490132, at * 5 (D. Mass. Apr. 4, 2019) (citing *Gomez v. Laidlaw Transit, Inc.*, 455 F. Supp. 2d 81, 90 (D. Conn. 2006)) ("To the extent plaintiff claims that defendant's ongoing failure to accommodate her . . . constituted retaliation, this claim is also insufficient as a matter of law. Requesting accommodation inevitably carries the possibility that the employer will not honor the request." "[A] failure to accommodate cannot constitute retaliation for an employee's request for accommodation."); *see also Pinto v. New York City Adm. for Children's Servs.*, 18-cv-1852, 2018 WL 4333990, at * 11 (S.D.N.Y Sept. 11, 2018) (although requesting a reasonable accommodation under the ADA is a protected activity, any activity comprising a plaintiff's failure-to-accommodate claim cannot also constitute protected activity such as that required to form the basis of a retaliation claim).

Thus, mere failure to accommodate cannot constitute retaliation for an employer's request for accommodation,[24] and Plaintiff's ADA retaliation claim will be dismissed.

Plaintiff also asserts that Defendant retaliated against her for taking FLMA leave. For purposes of an FMLA retaliation claim, taking medical leave is a protected activity. 29 U.S.C. § 2615. Plaintiff contends that Defendant retaliated against her for taking FMLA medical leave by refusing to accommodate her disability and by giving her a "below expectations" performance appraisal in June 2016, less than a month after she returned from medical leave (Doc. No. 68 at 25).[25] The Court has already rejected the failure to accommodate claim (noting that the mere failure

---

[24] *Missick v. City of New York*, 707 F. Supp. 2d 336, 357 (E.D.N.Y. 2010).

[25] Unlike the above discussion with regard to Davis's knowledge of Plaintiff's Title VII and Section 1981 protected activity, Defendant has not argued that Davis had no knowledge of

to accommodate under the ADA does not constitute retaliation) but now turns to the allegedly adverse action of a "below expectations" performance appraisal.

Plaintiff engaged in protected activity by taking FMLA leave. For purposes of this motion, the Court will not dispute that a "below expectations" performance appraisal is a materially adverse employment action. The performance appraisal came less than a month after Plaintiff returned from medical leave. As noted above, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence. *M.L.*, 2018 WL 2970704, at * 6. But for purposes of this motion, the Court will assume that Plaintiff can show a causal connection between her medical leave and her low performance appraisal less than a month later, and that she otherwise can establish a prima facie case.

Even if Plaintiff does present a *prima facie* case as to FMLA retaliation, however, Defendant has articulated a legitimate, non-discriminatory reason for the (negative) 2016 performance appraisal. The burden to articulate this reason is not onerous. *Ross v. City of Memphis*, 394 F. Supp. 2d 1024, 1033 (W.D. Tenn. 2005). Defendant's articulated reason is basically that Plaintiff had had performance issues as far back as 2013, and Davis honestly believed that Plaintiff's performance was not meeting expectations.

Plaintiff does not dispute that her 2013 performance evaluation, from a manager other than Davis, included the following language: "Spending so much of her time on the more technical tasks led her to being weaker on the PM processes and the necessary interactions with RNPO/Finance/Vendor Management." (Doc. No. 69 at ¶ 4). Similarly, Plaintiff does not dispute that her 2014 performance evaluation, from a different manager (again, not Davis) included

Plaintiff's FMLA medical leave. And the inference easily can be reasonably drawn in Plaintiff's favor that, as her supervisor, Davis would be fully aware of her medical leave.

language indicating that both the IS senior manager and the IS manager on the project Plaintiff was assigned to had "expressed concern" about the lack of progress made on the project and that Plaintiff's technical background (allowing her to understand the technical requirements and implementation of the project) limited her ability to perform project management roles and responsibilities. (*Id*. at ¶ 5). Moreover, Plaintiff does not dispute that Davis wrote the following in her 2015 Career Vision: "I would encourage Tanya to place the greatest focus on becoming proficient with the various processes and guidelines within the PMO. While it's good to 'deep dive' into business processes, our focus as successful project managers [is] to adhere to the guidelines and policies for which we're responsible." (*Id*. at ¶ 6).

Further, Plaintiff does not dispute that Davis received complaints about Plaintiff's performance and removed Plaintiff from a project for not being appropriately engaged. (Doc. No. 69 at ¶¶ 7-9). Plaintiff does not dispute that her 2015 "below expectations" rating was based upon Davis's belief that her performance did not meet expectations on two particular projects, complaints from others about her availability and engagement on projects, and his belief that Plaintiff was too focused on technical tasks instead of driving projects to completion. (*Id*. at ¶ 11). Those concerns were reflected in Plaintiff's 2015 performance evaluation. (*Id*. at ¶ 10).[26]

The Court finds that Defendant has sufficiently articulated a legitimate, non-discriminatory reason for Plaintiff's 2015 performance evaluation under the standards explained above with regard to ADA retaliation. Therefore, the burden shifts to Plaintiff to show that Defendant's articulated reason was pretext for retaliation. *Underwood*, 2018 WL 4494839, at * 5. A plaintiff

---

[26] Even after the 2015 performance evaluation, Davis continued to have concerns about Plaintiff not meeting expectations as a project manager and started her on a performance improvement process through the MPIE and PIP discussed in the facts, above. Plaintiff does not dispute these facts. (Doc. No. 69 at ¶¶ 12-15).

may establish pretext by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination. *Marshall v, The Rawlings Co., LLC*, 854 F.3d 368, 379 (6th Cir. 2017). Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally retaliated against the plaintiff remains at all times with the plaintiff. *Shoemaker v. ConAgra Foods, Inc.,* 219 F. Supp. 3d 719, 729 (E.D. Tenn. 2016). Thus, Plaintiff must provide a sufficient indication that the true reason for her 2015 "below expectations" performance evaluation was not Defendant's continued concern about her performance, but rather the fact that she took FMLA leave. *Id.*

Despite not disputing Defendant's Statements of Undisputed Material Facts concerning her performance and Davis's reasons for his evaluations as set forth above, Plaintiff asserts that she disagreed with Defendant's assessments about her performance. (Doc. No. 68 at 8-10). But as long as an employer held an "honest belief" in its proffered reason, the employee cannot establish pretext simply because the reason is ultimately shown to be incorrect. *Hawkins*, 34 F. Supp. 3d at 844. "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen v. Dow Chemical Co.*, 580 F.3d 394, 401 (6th Cir. 2009).

Plaintiff must show more than a dispute over the facts upon which the alleged adverse employment action was based. She must put forth evidence that demonstrates that Defendant did not honestly believe in the proffered reason (here, Plaintiff's performance weaknesses) for its actions. *Hawkins*, 34 F. Supp. 3d at 844. In determining whether Defendant had an "honest belief" in its stated reason for giving Plaintiff a "below expectations" performance appraisal, the Court must determine whether Defendant has established a reasonable reliance upon the particularized

facts that were before it at the time the decision was made. *Id.* at 845. Defendant is not required to show that the decisional process it used was optimal or that it left no stone unturned. Rather, the key inquiry is whether Defendant made a reasonably informed and considered decision before taking the adverse employment action. *Id.*

Having read the 2013-2015 performance evaluations and Davis's testimony concerning complaints from other employees about Plaintiff's performance (whether those complaints are valid or not valid), the Court finds that Defendant honestly believed in its reason for rating Plaintiff "below expectations" and putting her on performance improvement plans, and no reasonable juror would have a basis to find otherwise. Defendant also has shown that it reasonably relied upon those complaints in making its employment decisions concerning Plaintiff's performance. Moreover, Defendant did not terminate Plaintiff's employment; it attempted to improve her performance. This performance evaluation did not result in Plaintiff's being fired, being demoted or losing substantial pay or benefits.

Plaintiff has not carried her burden to raise a genuine issue of material fact concerning whether Defendant's articulated reason was pretext for retaliation under the FMLA; that is, that it had no basis in fact, did not motivate Defendant's actions, or was not sufficient to warrant her performance evaluations. Defendant has carried its burden to show no genuine issues of material fact exist and that it is entitled to summary judgment on Plaintiff's ADA and FMLA retaliation claims, and those claims will be dismissed.

## **CONCLUSION**

For the reasons explained herein, Defendant's Motion for Summary Judgment will be granted, and Plaintiff's claims will be dismissed.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE